UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**VICKIE R.,**[1]

    **Plaintiff,**

v.

Case No. 3:20-cv-00464
Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Vickie R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 11. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors,* reverses the Commissioner's decision, and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I. PROCEDURAL HISTORY

On May 5, 2015, Plaintiff protectively filed her application for benefits under Title II of the Social Security Act, alleging that she has been disabled since May 16, 2014. R. 185-86.[3] The application was denied following an administrative hearing, R. 19-28, but that decision was reversed by this Court upon joint motion for remand. *R[.] v. Comm'r of Soc. Sec.,* 3:18-cv-0373 (S.D. Ohio June 19, 2019). On remand, Administrative Law Judge ("ALJ") Stuart Adkins conducted a new hearing on May 18, 2020, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 913-55. In a decision dated August 4, 2020, the ALJ concluded that Plaintiff was not disabled prior to November 5, 2019, but that she became disabled on that date and continued to be disabled through the date of that decision. R. 890-905. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

II. LEGAL STANDARD

A. Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**B.  Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof through step four; at step five, the

burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was closely approaching advanced age on the date upon which the ALJ determined that she was disabled. R. 903. She met the insured status requirements of the Social Security Act through December 31, 2019. R. 893.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2014, her alleged disability onset date. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease; osteoarthritis of the bilateral knees; tachycardia; hypertension; hypothyroidism; obstructive sleep apnea; obesity; depression; and anxiety. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 895.

At step four, the ALJ found that, since May 16, 2014, Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that since May 16, 2014, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following exceptions: No more than frequent handling, fingering, and feeling with the left upper extremity. No more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. The claimant should avoid unprotected heights, dangerous machinery, and commercial driving. The claimant can perform simple and routine tasks, but not at a production-rate pace and without strict performance quotas. No more than occasional interaction with supervisors, co-workers, and the general public. The claimant can tolerate occasional changes to a routine work setting, defined as 1-2 per week.

R. 897. The ALJ also found that this RFC did not permit the performance of Plaintiff's past

relevant composite job as a purchasing agent and shipping and receiving clerk. R. 903.

At step five and relying on the testimony of the vocational expert, the ALJ found that, prior to November 5, 2019, a significant number of jobs—*e.g.*, jobs as a document preparer, sorter, and inspector—existed in the national economy and could be performed by Plaintiff. R. 904. However, the ALJ found further that, as of November 5, 2019, the Medical-Vocational Guidelines, Rule 201.14, directed a finding of "disabled." R. 905. The ALJ therefore concluded that Plaintiff has been disabled within the meaning of the Social Security Act beginning on November 5, 2019. *Id.*

Plaintiff argues that the ALJ erred in weighing the opinions of her treating primary care physician, her treating psychiatrist, her mental health counselor, and the state agency's non-examining consultants; she asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Statement of Errors,* ECF No. 12; *Plaintiff's Reply*, ECF No. 15. This Court agrees that the ALJ failed to properly evaluate the opinions of Plaintiff's treating primary care physician and psychiatrist.

## IV. RELEVANT EVIDENCE

Because the Court concludes that the ALJ failed to properly evaluate the opinions of Plaintiff's treating primary care physician and psychiatrist, the Court will limit its discussion of the evidence to those issues.

As the ALJ found, Plaintiff suffers from both physical and mental impairments. R. 893. Plaintiff testified at the second administrative hearing that she continues to experience knee and back pain that limits her ability to sit, stand, and walk, R. 922, and for which a knee replacement and a spinal fusion have been recommended, R. 937, 941, cardiovascular problems, R. 929, mental problems, R. 931, including problems with her memory and concentration, R. 936, and

sleep apnea, R. 938. She relies on her adult children to take care of household chores; she visits her mother. R. 940-41. She experiences migraines "twice a week." R. 945. She lies in a recliner for "most of the day." R. 946.

In June 2014, Cynthia Kallet, D.O., Plaintiff's primary care physician since May 2014, R. 451, completed a check-the-box form assessing Plaintiff's mental impairments. R. 427-28. According to Dr. Kallet, Plaintiff was moderately impaired in most areas of functioning. R. 427. Dr. Kallet had prescribed medication for Plaintiff's anxiety and panic attacks. R. 428. In July 2014, Dr. Kallet completed another assessment of Plaintiff's mental status in which she diagnosed anxiety and depression for which medication had been prescribed. R. 451-52. According to Dr. Kallet, Plaintiff was alert and oriented x 3; her impairment in her constriction of interests and in her ability to perform work requiring regular contact with others, perform intellectually complex tasks, supervise or manage others, and perform under stress were moderately severe. R. 452. Plaintiff was also moderately impaired in her ability to understand, carry out, and remember instructions, respond appropriately to supervision, perform work where contact with others will be minimal, and perform varied tasks. *Id*.

Dr. Kallet referred Plaintiff to a psychiatric consult, R. 428, and Plaintiff began psychiatric treatment, including medical management, with Gary Balster, M.D., in August 2014. R. 398. In October 2014, Dr. Balster completed a check-the-box evaluation form in which he indicated that Plaintiff's impairment in her ability to relate to other people was "[m]ild" (defined as an "impairment of slight importance which does not affect functionality ability"), but that her impairment in her ability to perform work requiring regular contact with others, and where contact with others would be minimal, was "[s]evere" (defined as an "[e]xtreme impairment of ability to function"). R. 397. According to Dr. Balster, Plaintiff was moderately impaired in her

7

ability to understand, remember, or carry out instructions, respond appropriately to supervision, perform tasks of minimal intellectual effort, and perform repetitive or varied tasks. *Id*. She was moderately severely impaired in her constriction of interests and in her ability to make independent judgments. *Id*. She was severely impaired in her ability to perform intellectually complex tasks, to supervise or manage others, and to perform under stress. *Id*.

In May 2015, Dr. Balster completed another psychiatric assessment in which he diagnosed anxiety disorder and major depressive disorder. R. 661. On mental status examination, Dr. Balster noted a sad and tearful mood and affect. *Id.* Plaintiff's symptoms of anxiety included difficulty concentrating, irritability, and helplessness. *Id*. Her thought process and content were logical and appropriate and her insight and judgment were good and intact. *Id*. She had a normal memory. *Id*. According to Dr. Balster, Plaintiff "continues to describe symptoms of hopelessness & worthlessness. She continues to identify difficulty with the stressors in her life." *Id*. Although Plaintiff's activities around the home and in the community were within normal limits, she had difficulty with focus and concentration, and a loss of interest in normal activities. R. 662. According to Dr. Balster, Plaintiff "cannot cope with normal stresses," cannot understand, remember, and carry out instructions "due to [decreased] focus and concentration," and cannot supervise or manage others "due to her anxiety & depression." *Id*.

In December 2016, Dr. Kallet completed a check-the-box assessment of Plaintiff's ability to do work-related physical activities. R. 712-13. Dr. Kallet diagnosed cervical disc bulging and lumbar spondylosis with myelopathy. R. 712. Her reported symptoms were numbness and burning in her leg and left arm. R. 713. Dr. Kallet had not advised Plaintiff to use an assistive device. R. 712. According to Dr. Kallet, Plaintiff can sit, stand, and walk for less than two hours in an eight-hour workday, for no more than 15 minutes at a time. *Id*. She can lift and carry less

8

than five pounds "[f]rom very little to 1/3 of an 8-hour day." *Id*. She can never climb, balance, squat, kneel, crouch, crawl, push, pull, or bend. *Id*. She can occasionally reach overhead and in all directions. *Id*. She can frequently use both hands. R. 712-713. Dr. Kallet further opined that Plaintiff needs to elevate her legs above waist level for more than four hours during the day. R. 713. She also needs to take an unscheduled break every 15 minutes during the workday because of "pain if she remains in the same position." *Id*. Finally, Plaintiff could be expected to miss more than four days per month due to her impairments. *Id*.

**V.      DISCUSSION**

Plaintiff contends that the ALJ erred in his evaluation of the opinions of Drs. Balster and Kellet. This Court agrees.

An ALJ must consider all medical opinions in evaluating a claimant's applications. 42 U.S.C. § 423(d)(5)(B) (2012); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Under the regulations[4] governing Plaintiff's application, the opinion of a treating physician must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion is not accorded controlling weight, the ALJ must proffer "good reasons" for discounting the opinion of a treating physician. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Those reasons must also find substantial support in the record and be sufficiently specific to make clear the weight given to the opinion

---

[4] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, *inter alia*, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Because Plaintiff's application was filed prior to that effective date of March 27, 2017, the treating physician rule applies to her claim.

9

and the reasons for that weight. *Id*. However, a formulaic recitation of factors is not necessary. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

If the ALJ does not assign controlling weight to the opinions of the claimant's treating providers, the ALJ must then explain the weight assigned to the opinions of all medical sources. *See* 20 C.F.R. § 404.1527(e)(2)(ii). In so doing, the ALJ is required to apply the following factors: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. . . ." *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(3)-(6)).

The ALJ assigned "partial" weight to Dr. Balster's October 2014 opinion:

> The undersigned gives partial weight to Dr. Balster's opinion, as given in an October 2014 Behavioral Health capacities Evaluation. As a treatment provider, Dr. Balster's opinion must be given controlling weight to the extent that it is not inconsistent with other medical evidence in the record. One does not even have to reach to other records to find significant inconsistencies, however. Dr. Balster opined that that the claimant has a mild impairment in her ability to relate to others, which is defined in the Evaluation as a "[s]uspected impairment of slight importance which does not affect functional ability." Dr. Balster further opined, however, that the claimant has a severe limitation in her ability to do work that requires regular contact with others, and also a severe limitation in her ability to perform work involving minimal contact with others. This essentially says that the claimant is able to relate to others with no functional limitations, except at work, where she cannot interact with others at all. These internal inconsistencies, coupled with the lack of a narrative explanation for the opinion and the fact that, apparently, Dr. Balster's practice had only been treating the claimant for a few months at that point, lead the undersigned to decline to give controlling weight to this opinion, nor any weight to the specific opinions on social interaction. The undersigned finds Dr. Balster's opinion regarding the claimant's ability to focus on tasks more consistent both internally and with the record as a whole, and has

> crafted the residual mental functional capacity limitations noted above with the intent of accommodating the claimant's moderate concentration deficits.

R. 900-901 (citations to record omitted).

The ALJ made no mention of Dr. Balster's May 2015 assessment in which this treating psychiatrist opined that Plaintiff "cannot cope with normal stresses," cannot understand, remember, and carry out instructions "due to [decreased] focus and concentration," and cannot supervise or manage others "due to her anxiety & depression." R. 662. The ALJ clearly erred in this oversight. It is true that an ALJ's error in failing to properly evaluate a medical source opinion can be viewed as harmless "if the ALJ adopted the opinion or made findings consistent with that opinion." *Beery v. Comm'r of Soc. Sec.*, 819 F. App'x 405, 408 (6th Cir. 2020) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). However, this case presents a complete failure to consider Dr. Balster's May 2015 opinion and the Court is not at all confident in its ability—or even authority—to determine in the first instance whether the RFC found by the ALJ in fact fully incorporated this treating psychiatrist's opined limitations.

The ALJ also accorded "partial weight" to Dr. Kallet's assessment of Plaintiff's mental impairments:

> . . . [A]lthough Dr. Kallet is a medical treatment provider for the claimant, rather than a mental health treatment provider, her analysis of the claimant's [ ] mental health-based work-related functional limitations are instructive, especially when compared with those of Dr. Balster and Ms. Smith-Morelock. Dr. Kallet notes moderate and moderately severe levels of limitation, but none of the extreme levels of limitation implied by the other opinions. Her analysis is also based on a longer treating relationship with the claimant, and is therefore more persuasive, despite it addressing an area outside of her area of specialization. Therefore, the undersigned gives partial weight to Dr. Kallet's overall opinion.

R. 661. Although Dr. Kallet is Plaintiff's primary care provider, she has also treated Plaintiff's mental impairments. *See, e.g.,* R. 428. The ALJ's evaluation of her opinion regarding Plaintiff's mental impairments wholly fails to comply with the applicable regulation governing the opinion

of a treating provider, which requires that an ALJ first consider whether that opinion should be accorded controlling weight. *See* 20 C.F.R. § 404.1527(e). Although the ALJ found this treating provider's opinion regarding Plaintiff's mental impairments "more persuasive" than those articulated by Plaintiff's treating mental health professionals, the ALJ should have first considered whether Dr. Kallet's opinions regarding Plaintiff's mental impairments should be accorded controlling weight. The ALJ's failure to do so was error.

The ALJ also accorded "partial" weight to Dr. Kallet's opinions regarding Plaintiff's physical limitations:

> The undersigned gives partial weight to Dr. Kallet's opinion, as given in a Behavioral Health Capacities Evaluation and a Treating Physician Medical Opinion of Ability to do Work-Related Activities – Physical. In the Opinion, Dr. Kallet, the claimant's primary care provider, opined that the claimant has extreme physical limitations to such an extent that she is limited to significantly less than the exertion required for even sedentary work. Dr. Kallet opined that the claimant cannot sit, stand, or walk for even 15 minutes at a time, nor for even two hours during the workday, and cannot lift even five pounds at any time, nor perform any postural movements. This is inconsistent with the claimant's own testimony, which indicates that she can lift and carry a gallon of milk, although she does not often need to. It is also inconsistent with the relatively modest treatment recommendations noted by Dr. Kallet, as the claimant has not undergone surgical or other invasive interventions beyond physical therapy referrals and occasional injections of pain medications despite her years-long history of back pain. The undersigned finds it unlikely that an individual with the extreme levels of physical functional limitation suggested by Dr. Kallet's opinion would not have had more significant interventions recommended, or at least been prescribed or recommended the use of an assistive device. . . . Therefore, the undersigned gives partial weight to Dr. Kallet's overall opinion.

R. 901 (citations to record omitted). The ALJ erred in this evaluation as well. Nowhere in his decision did the ALJ consider Dr. Kallet's opinion that Plaintiff would need to elevate her legs above waist level for more than four hours during the day, would need to take an unscheduled break every 15 minutes during the workday because of "pain if she remains in the same position," and could be expected to miss more than four days per month due to her impairments.

12

*See* R. 713. The ALJ's failure to even acknowledge this portion of Dr. Kallet's opinion constitutes an error that cannot be overlooked.

In light of these errors, the Court concludes that the decision of the Commissioner must be reversed. Plaintiff asks that the matter be remanded to the Commissioner, not for further consideration, but with directions for the granting of benefits for the period between Plaintiff's alleged disability onset date of May 16, 2014, and November 4, 2019, *i.e.,* the day before the date on which the ALJ found that Plaintiff's disability began. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 1491, *Plaintiff's Reply*, ECF No. 15, PageID# 1530.

The Court declines to do so. Where, as here, there exists conflicting evidence relevant to the proper resolution of Plaintiff's claim, the matter must be remanded for further proceedings by the Commissioner, whose duty it is to resolve such conflicts. *See Faucher v. Sec'y of Health and Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.").

VI.  **CONCLUSION**

**WHEREUPON** the Court **GRANTS** *Plaintiff's Statement of Errors*, ECF No. 12, **REVERSES** the Commissioner's decision, and **REMANDS** the matter to the Commissioner for further proceedings.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date: October 26, 2022            *s/Norah McCann King*
NORAH McCANN KING
UNITED STATES MAGISTRATE JUDGE